UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHAMISA BEDA, a minor, by and through her guardian ad litem, Natalina Kanteiko; KURT G. REDLINGER, an individual; and ANNE E. REDLINGER, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>HARTFORD CASUALTY INSURANCE COMPANY, a New Jersey corporation; USAA INSURANCE AGENCY, INC., a Texas Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 11-CV-01389 BEN (WVG)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT [ECF No. 23]**<br><br>**(2) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF No. 34]** |

**INTRODUCTION**

A child, Khamisa Beda, nearly drowned in a backyard pool at the home of Kurt and Anne Redlinger. This action for breach of insurance contract and tortious bad faith addresses whether Hartford Casualty Insurance had a duty to defend and indemnify the Redlingers in Beda's personal injury lawsuit. The wrinkle is that Hartford was not the Redlingers' homeowner's insurer. Hartford had issued a

business insurance policy tied to the Redlingers' separate, commercial property. The Redlingers contend that because they managed the commercial property out of their home, Hartford was obligated to defend them in an action arising out of an incident that occurred at the home.

Pending before the Court are: (1) Hartford's Motion for Summary Judgment, Or In The Alternative, Partial Summary Judgment (ECF No. 23); and (2) Plaintiffs' Motion For Partial Summary Judgment (ECF No. 34). The Plaintiffs in this action are Kurt and Anne Redlinger, as well as Beda as a judgment creditor pursuant to California Insurance Code § 11580. Having reviewed the parties' submissions and the applicable law, the Court concludes that, under the circumstances, Hartford was not obligated to defend or indemnify the Redlingers in the Beda litigation. Hartford's motion for summary judgment is **GRANTED**. Plaintiffs' motion is **DENIED**.

## BACKGROUND[1]

In May 2005, Beda was attending a birthday party for the Redlingers' daughter at the Redlingers' home on Cibola Court in San Diego (the "Cibola Court residence"). She nearly drowned in the swimming pool and suffered severe brain injury.

In May 2006, Beda sued the Redlingers for negligence through her guardian *ad litem*. (RJN, Ex. B, ECF No. 36-3 ["Beda Complaint"].)[2] USAA, the Redlingers' homeowner's insurer, appointed attorney Gregory Konoske to represent the Redlingers in the personal injury action.[3] Later, Sun-Pro of California, Inc., the

---

[1] The following facts are taken from the parties' evidentiary submissions. Although the parties' characterizations of certain facts differ, the Court finds them essentially undisputed for the purposes of this order.

[2] Hartford's request for judicial notice (ECF No. 36-3) is **GRANTED**. *See* FED. R. EVID. 201(b).

[3] Plaintiffs do not dispute that Konoske represented the Redlingers in the personal injury litigation, but they assert he was neither the couple's "personal counsel" nor "coverage counsel." (Pls.' Resp. to Def. Hartford's Separate Statement in Supp. of MSJ at 5-6, ECF No. 25-1.)

Redlingers' family-owned skin care products business, was added as a doe defendant. (RJN, Ex. C, ECF No. 36-3.) Like the Redlingers, Sun-Pro stood accused of negligently maintaining, managing, controlling, and supervising the premises. Nautilus Insurance Company, Sun-Pro's insurer, appointed counsel to defend the company and eventually tendered its policy limits of $1 million to settle the claims against it.

In April 2007, the Redlingers tendered a defense to another insurer, Hartford. Not receiving a response, Konoske followed up with tender letters on May 30 and June 6, 2007.[4] Hartford contends that the initial letters were sent to the wrong address and that no tender was received by its liability claim office until June 2007. (Def. MSJ at 3, ECF No. 23-1.)

Hartford had issued a business insurance policy with "Kurt Gregory and Anne Elizabeth Redlinger" as the named insureds. The policy covered the period of July 18, 2004 to July 18, 2005. (Def.'s Ex. C, ECF No. 23-6 ["Policy"].) In the business liability coverage form, the policy states: "We will pay on behalf of the Insured those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply."

The Redlingers are identified in the declarations as "INDIVIDUAL[S]." In the section defining "Who Is An Insured," the policy clarifies: "If you are designated in the Declarations as: [¶] a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner." The business description is "MULTIPLE OCCUPANCY—OFFICE." The policy also provides an address: "2540 Fletcher Pkwy [¶] El Cajon, California 92020." The

---

[4] Hartford contends that the Redlingers' initial tender letters were sent to the wrong address and that no tender was received by its liability claim office until June 2007. (Def.'s MSJ at 3, ECF No. 23-1.)

parties agree this referred to a commercial office property in El Cajon, California that is owned and managed by the Redlingers. (Def.'s MSJ, at 2, ECF No. 23-1; Pls.' MSJ, at 1. ECF No. 34-1.)

Konoske provided Hartford with the pleadings, deposition transcripts, and other documents, to no avail. Hartford refused the tender in July 2007. The insurer explained in a letter that Beda's complaint contained "no allegations that this incident or the party precipitating the incident had anything to do with the 'conduct of a business.'" It concluded: "[I]f you have any information that The Hartford's position is erroneous or additional materials which should be considered, please forward this to my attention." (Def.'s Ex. H, ECF No. 23-10.)

Konoske sent follow-up letters requesting reconsideration and suggesting a basis for coverage under Hartford's policy. He explained in one letter, for example, that "Mr. and Mrs. Redlinger, from time to time, work from their home doing business for Sun-Pro." (Def.'s Ex. I, ECF No. 23-10.) He offered "evidence" in a subsequent letter, stating that the Redlingers "worked from home," "maintained a home office for Sun Pro," "stored product at their home," "housed a company vehicle at their home," and "frequently gifted product to guests at their home," etc. (Def.'s Ex. K., ECF No. 23-10.) He provided deposition transcripts in which the Redlingers testified as to the nature and extent of Sun-Pro business operations, both at both the home and at the Fletcher Parkway building, where Sun-Pro was a tenant. (Def.'s Ex. O, ECF No. 23-13.)

Hartford's coverage position did not change. It denied re-tender in an August 31, 2007 letter, explaining that it had reviewed the complaint and discovery but saw no indication the birthday party "was in any way related to the conduct of the Redlinger's [sic] business." (Def.'s Ex. L, ECF No. 23-10.) It elaborated in a March 2008 letter that the "business" insured by its policy was the Redlingers' "multiple occupancy—office," and the fact that the Redlingers' other business, Sun-Pro, did work at the Redlingers' home was "not relevant to the question of who The

Hartford insured." Hartford's letter again concluded:

> This analysis is based on the information that has been made available to us. The Hartford wants those parties claiming to be insured to receive all benefits to which they may be entitled to under The Hartford policies of insurance. Therefore, if you have any information that The Hartford's position is erroneous or additional materials which should be considered, please forward this to my attention.

(Def.'s Ex. P, ECF No. 23-13.) It is undisputed that no one provided additional information or materials to Hartford in response to its March 2008 letter, prior to the filing of the present lawsuit.

In January 2009, the Redlingers and Beda proceeded to a one-day binding arbitration to resolve the underlying dispute. Beda agreed not to execute against the Redlingers' personal assets in exchange for an excess judgment lien in future coverage litigation against Hartford. (Def.'s Ex. R, ECF No. 23-14.) The arbitrator concluded that "the standard of care for inviting eight year olds to a pool party was not met, in that there was no adult supervision present at the time of the incident." He awarded Beda $9,880,330.[5] (Def.'s Ex. S, ECF No. 23-14.)

This lawsuit followed. Plaintiffs filed suit in San Diego County Superior Court, but USAA, a former defendant, removed the case here in June 2011. (ECF No. 1.) USAA was later dismissed, and Plaintiffs amended the claims against Hartford. (ECF No. 19.) The First Amended Complaint ("FAC") asserts causes of action for breach of contract, declaratory relief, and breach of implied covenant of good faith and fair dealing for, among other things, denying coverage without properly investigating the facts giving rise to Beda's claims against the Redlingers.

Hartford moved for summary judgment in March 2012. The insurer contends that it properly denied defense and indemnity to the Redlingers based on its examination of the policy, the allegations in Beda's complaint, and the absence of any facts or allegations linking the El Cajon office building business to Beda's

---

[5] Payments of policy limits by other insurance carriers reduced the net award to $7,645,300. (FAC ¶ 11.)

accident. Alternatively, Hartford seeks partial summary judgment against the Redlingers on the issue of indemnification for the arbitration award, and summary judgment against Beda as a judgment creditor, on the grounds that there was no coverage for that award.

With Hartford's motion pending, Plaintiffs moved for partial summary judgment in July 2012. They seek a declaration that Hartford was obligated to defend the Redlingers in the personal injury litigation, that Hartford breached its contract by failing to defend and settle Beda's claims within its $1 million policy limits, and that Hartford is liable for the entire unpaid amount of the arbitration award.

Both motions are fully briefed. The parties advance essentially the same arguments in both their primary motions and in their responses to the opposing party's motions. Accordingly, the Court will address the cross-motions for summary judgment together.

## DISCUSSION

### 1. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In considering a summary judgment motion, the court examines the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). A moving party bears the initial burden of showing no genuine issue of material fact. *Travelers Indem. Co. v. Arena Grp. 2000, L.P.*, No. 05-CV-1435 JLS (CAB), 2007 WL 4170421, at *5 (S.D. Cal. Nov. 20, 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). It can do so by negating an essential element of the non-moving party's case, or by showing that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Id.*

The burden then shifts to the non-moving party to show that there is a genuine issue for trial. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. As a general rule, the "mere existence of a scintilla of evidence" will be insufficient to raise a genuine issue of material fact; there must be evidence on which the jury could reasonably find for the non-moving party. *Id.* at 252. A "district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Under California law, an insurer's duty to defend can generally be resolved on summary judgment. *Butler v. Clarendon Am. Ins. Co.*, 494 F. Supp. 2d 1112, 1122 (N.D. Cal. 2007); *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995) (citing *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 818 (1990)).

### 2. DUTY TO DEFEND

The first issue before the Court is whether Hartford had a duty to defend the Redlingers. An insurer cannot be found liable for breach of contract or the implied covenant of good faith and fair dealing for denying a defense if it had no duty to defend. *See Waller*, 11 Cal. 4th at 36.

In California, the duty to defend turns upon those facts known to the insurer at the inception of a third party lawsuit. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993). The duty is very broad. An insurer must defend its insured whenever it ascertains facts that create even the potential for liability under the policy. *Id.* The burden initially lies with the insured to make a *prima facie* showing of a potentially covered claim. *Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co.*, 302 F.3d 1049, 1054-55 (9th Cir. 2002); *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998). If the insured clears that bar, the burden shifts to the insurer to prove that the claim *cannot* fall within the policy coverage. *Montrose*, 6 Cal. 4th

at 300. "If an insurance policy provides no potential basis for coverage, the insurer is under no duty to defend an action against the insured." *Waller*, 11 Cal. 4th at 37.

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). Facts extrinsic to the complaint and *known* by the insurer may also trigger the duty to defend if they reveal a possibility of a covered claim. *Swain v. Cal. Cas. Ins. Co*, 99 Cal. App. 4th 1, 8 (1st Dist. 2002). But "an insurer does not have a continuing duty to investigate whether there is a potential for coverage. If it has made an informed decision on the basis of the third party complaint and the extrinsic facts known to it at the time of tender that there is no potential for coverage, the insurer may refuse to defend the lawsuit." *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1st Dist. 1995); *Friedman Prof'l Mgmt. Co., Inc. v. Norcal Mut. Ins. Co.*, 120 Cal. App. 4th 17, 36 (4th Dist. 2004) ("You don't prove an insurer has a duty to defend merely by making a good argument for potential coverage, you show it by demonstrating a potential for coverage under the terms of the actual policy.")

### A.  The Policy

As a threshold matter, the Court must construe the Hartford policy. Interpretation of an insurance contract is a question of law. "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Id.*

Based on the declarations, the Court is persuaded that the Hartford policy covered the Redlingers only with respect to the conduct of their "multiple occupancy—office" business. Although the policy identified the Redlingers as individual insureds, the salient language, which appears later in the policy, is that they were covered "only with respect to the conduct of a business of which [they

were] the sole owner[s]." That language, coupled with the description of the business in the declarations pages, works to limit the scope of coverage to those risks associated with the conduct of that particular business. *See Steadfast Ins. Co. v. Dobbas*, No. S-05-0632 FCD JFM, 2008 U.S. Dist. LEXIS 8399, at *20 (E.D. Cal. Feb. 5, 2008); *Fid. & Deposit Co. v. Charter Oak Fire Ins. Co.*, 66 Cal. App. 4th 1080, 1086-87 (2d Dist. 1998).

### B. The Complaint

With the above limitation in mind, the Court turns to whether the potential for covered liability was apparent from the facts alleged in Beda's complaint. "California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty." *Storek v. Fid. & Guar. Ins. Underwriters, Inc.*, 504 F. Supp. 2d 803, 808 (N.D. Cal. 2007). But the insured "may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson*, 37 Cal. App. at 1114.

Beda alleged three causes of action, all sounding in negligence. First, Beda alleged that the Redlingers and various Doe defendants (including, eventually, Sun-Pro) negligently maintained, managed, controlled and supervised the Cibola Court home and swimming pool. Second, Beda alleged that other Doe defendants attending the party negligently assisted, supervised, monitored, or controlled the activities of the attendees. Third, Beba alleged that the Redlingers and various Doe defendants negligently designed, constructed, installed, maintained, and repaired the swimming pool.

Plaintiffs argue in this action that the allegations in Beda's complaint leave little doubt that she potentially sought damages within the coverage of the Hartford policy. To get there, they advance a theory of coverage grounded in the Redlingers' exercise of *control* over the Cibola Court home through their management of the El

Cajon office property.[6] Put simply, Plaintiffs contend that the Redlingers used their home as an "operational headquarters" for the office building, and in so doing, they assumed a continuing obligation as managers of that business to warn of dangerous conditions and adequately supervise the premises. (Pls.' Opp. at 13, ECF No. 25.) They submit a declaration from Kurt Redlinger, who states that the Fletcher Parkway office building is but one of several businesses that the couple operated from their Cibola Court home. (K. Redlinger Decl. ¶¶ 4, 8, ECF No. 25-4.) Kurt Redlinger asserts that they paid the bills for the office building at the home, negotiated with contractors for office building-related services at the home, signed Sun-Pro's lease for space in the office building at the home, and so on. (*Id.* ¶ 12.) Mail pertaining to the Fletcher Parkway property was received at the same P.O. Box where the Redlingers received their personal mail. (*Id.* ¶ 14.)

In the Court's view, Plaintiffs' theory of coverage, in light of the facts presented, strains the language of the Hartford policy close to the breaking point. It presumes that the parties' intention in forming the contract was to extend business liability coverage to injuries suffered at the Redlingers' home during purely social gatherings. That seems unlikely.

Even assuming that to be the case, however, the Court fails to see how Hartford was "*fairly* apprised of *facts*" presenting potential liability from Beda's allegations. *See Lasen Canyon Nursery, Inc. v. Royal Ins. Co. of Am.*, 720 F.2d 1016, 1018 (9th Cir. 1983) (emphasis in original). Plaintiffs suggest that Beda's complaint was no different than the premises liability suit underlying *Travelers*. (Pls.' Reply at 2-3, ECF No. 37.) The Court disagrees. The dispute in *Travelers* involved whether an insurance policy covering a limited partnership's operation of a

---

[6] Plaintiffs actually assert a broader theory of coverage in the FAC, suggesting that Hartford's Policy covered *several* Redlinger owned businesses. (FAC ¶¶ 26-28.) In their motion for partial summary judgment, however, Plaintiffs limit their theory to the El Cajon office business. As they put it, "[t]he Redlingers are contending that as the owners of the Rental Property Business insured by Hartford, Hartford should have defended and indemnified them when they were sued for negligence arising from their exercise of control over the Cibola Court property." (Pls.' Reply at 3, ECF No. 37.)

sports arena extended to claims arising out of accident at an adjacent shopping center. The same partnership managed both properties. *Id.* The court concluded that the policy did cover the injury because the complaint specifically pled a cause of action for premises liability against the partnership in its capacity as operator of the sports arena. *Id.* Notably, the complaint set out "separate and distinct" descriptions of the partnership as *both* the operator of the sports arena and operator of the shopping center. *Id.* It alleged that the partnership had a duty, in *both capacities*, to maintain the shopping center in a safe condition, and it specifically alleged why. *Id.*

Beda's complaint contains no such distinctions. She did not separately identify the Redlingers as both homeowners and the operators of an off-site office building, nor explain how that might be relevant to her claims. She did not allege that the Redlingers had a duty *in their capacity as operators of the office building* to adequately supervise the home. There was no mention of the office building at all. The Court rejects Plaintiffs' contention that simply because Beda named the Redlingers in her complaint as individuals ("the same capacity in which they are named as insureds in the Hartford policy"), Hartford was fairly apprised its potential for covered liability from the face of the complaint. The duty to defend is "not so expansive that it requires an insurer to undertake a defense as to claims that are both factually and legally untethered from the third party's complaint." *Storek*, 504 F. Supp. 2d at 812.

### C. Extrinsic Facts

The analysis does not end there, of course. Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend is fixed, not just by the facts learned from the complaint, but also facts learned from "the insured," or "other sources." *Gray*, 65 Cal. 2d at 276-77.

Hartford contends that it reviewed the pleadings, written discovery, and depositions transcripts that Konoske provided, but nothing in any of the materials suggested the Redlingers were operating the El Cajon office building business from

1  home, much less during the party.  In one deposition, for example, Kurt Redlinger
2  stated he was at a church function when the accident occurred.  (Def.'s Ex. G, ECF
3  No. 23-8.)  In another, Anne Redlinger stated that she attending the party, having a
4  conversation with another mother.  (Def.'s Ex. G, ECF No. 23-9.)  Hartford also
5  submits the letters it received from Konoske (Def.'s Exs. D, G, I, J, K, M, O, ECF
6  Nos. 23-7, 23-8, 23-9, 23-10, 23-11, 23-13.) as well as transcripts of the Redlingers'
7  depositions in which they testified in their capacity as officers of Sun-Pro.  (Def.'s
8  Ex. O, ECF No. 23-13.)  Sun-Pro's operations are well covered in those documents,
9  but there is no explicit mention of the management and operations of the Fletcher
10 Parkway building itself.
11       Plaintiffs' position is that the potential for a covered claim was clear from the
12 information provided to Hartford and the "facts of which Hartford is deemed to have
13 constructive knowledge."  (Pls.' MSJ at 12, ECF No. 34-1.)  Specifically, Plaintiffs
14 contend that Hartford would have seen the potential for covered liability had it
15 performed a reasonable investigation.  It asserts that Hartford should be charged with
16 knowledge that the El Cajon office building business was operated out of the
17 Redlingers' Cibola Court home.
18       As evidence of Hartford's inadequate inquiry, Plaintiffs lean heavily on a
19 deposition transcript of the Hartford claim consultant who handled the Redlingers'
20 case. (Pls.' Ex. 21, ECF No. 25-29 ["Godfrey Dep."].)  When asked whether he had
21 talked directly to the Redlingers during the investigation or sought permission from
22 Konoske to do, the consultant said no.  (Godfrey Dep. at 58-59.)  When asked if he
23 had inquired into how the home was being used, the consultant stated that he did not
24 recall.  (*Id.* at 86.)  When asked if he had asked about the operations and
25 management of the office building or inquired about the training and experience of
26 the Redlingers' counsel, the consultant suggested he had not.  (*Id.* at 87, 90.)  But
27 when asked whether he was aware, as a general matter, that some individuals
28 managed rental properties out of separate homes, the consultant stated that he was.

(*Id.* at 107-08.)

Having reviewed both parties' evidence, the Court finds no basis to infer that the known extrinsic facts raised the potential for a covered claim. First, nothing in Konoske's letters or the material otherwise provided to Hartford stated what Plaintiffs now claim to be the case—that the Redlingers used their home as the hub of the Fletcher Parkway business. Although Konoske did inform Hartford that the Redlingers worked from home, he did so only in reference to their work with Sun-Pro. (Pls.' Ex. 10, ECF No. 25-38.) Indeed, Konoske's focus over the course of several letters was consistently Sun-Pro, as were the Redlingers' later depositions. These materials may have revealed a connection between Sun-Pro and Beda's injuries. Absent speculation, however, they said nothing about the potential for liability based on the Redlingers' management of an off-site commercial property. "[W]hile the universe of facts bearing on whether a claim is potentially covered includes extrinsic facts known to the insurer at the inception of the suit as well as the facts in the complaint, it does not include *made up* facts, just because those facts might naturally be supposed to exist along with the known facts." *Friedman Prof'l Mgmt. Co.*, 120 Cal. App. 4th at 35-36 (emphasis in original).

Second, Plaintiffs have failed to raise a triable issue of fact regarding the adequacy of Hartford's investigation. As a general matter, an insurer that fails to follow reasonable standards in investigating claims is "charged with constructive notice of facts that it might have learned if it had pursued the requisite investigation." *KPFF, Inc. v. Cal. Union Ins. Co.*, 56 Cal. App. 4th 963, 973 (1st Dist. 1997). Under California law, however, an insurer satisfies its duty to investigate by comparing the allegations in the complaint with the terms of the policy and by considering known extrinsic facts. *Bock v. Travelers Prop. Cas. Ins. Co.*, 465 Fed. Appx. 623, 625 (9th Cir. 2012); *Am. Int'l Bank v. Fid. & Deposit Co.*, 49 Cal. App. 4th 1558, 1571 (2d Dist. 1996) (stating that an insurer's duty "may be fully met" by a review of the complaint and policy if nothing therein suggests

potential liability). Here, neither the tendered pleadings nor the known extrinsic facts signaled the need for further inquiry. Informed that the Redlingers did some work for Sun-Pro at the home, Hartford clarified that its insured was the "multiple occupancy—office" and invited the Redlingers to provide additional information suggesting potential liability. For whatever reason, the Redlingers did not to follow up, which suggested, intentionally or not, that further inquiry would yield nothing meaningful. Even viewing this evidence in the light most favorable to Plaintiffs, the Court does not believe a reasonable jury would could find Hartford's investigation insufficient under these circumstances.

Third, Plaintiffs factual assertions in *this litigation* do not raise a triable issue of fact regarding the potential for coverage. Kurt Redlinger's declaration that the Cibola Court home was the operational headquarters of the "multiple occupancy—office" business has no role in the duty-to-defend analysis without some evidence that these facts were known to Hartford at the time of tender. *See Monticello Ins. Co. v. Essex Ins. Co.*, 162 Cal. App. 4th 1376, 1388-89 (2d Dist. 2008); *We Do Graphics, Inc. v. Mercury Cas. Co.*, 124 Cal. App. 4th 131, 136 (4th Dist. 2004) ("The duty to defend is not measured by hindsight, but turns 'upon those facts known by the insurer at the inception of a third party lawsuit'" (citing *Montrose*, 6 Cal. 4th at 295)). Plaintiffs have not supplied facts suggesting that was the case.

In sum, Plaintiffs fail to raise a genuine issue of material fact as to whether Hartford was apprised of facts when defense was tendered indicating the potential for coverage. Plaintiffs also fail to raise a triable issue regarding the adequacy of Hartford's coverage investigation. As a result, Hartford's duty to defend did not arise as a matter of law. By denying the Redlingers' tender, Hartford neither breached the terms of the policy nor the implied covenant of good faith and fair dealing.

//

### 3. DUTY TO INDEMNIFY

Turning, briefly, to Hartford's duty to indemnify the Redlingers for the arbitration award, the law is clear: "Where there is a duty to defend, there *may* be a duty to indemnify; but where there is no duty to defend, there *cannot* be a duty to indemnify." *Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945, 958 (2001) (emphasis in original). Having concluded that Hartford's duty to defend did not arise, Hartford has no duty to provide indemnification for the arbitration award.

### CONCLUSION

For the reasons stated above, the Court **GRANTS** Hartford's motion for summary judgment and **DENIES** Plaintiffs' motion for partial summary judgment.

**IT IS SO ORDERED**.

DATED: February 27, 2013

_____
Hon. Roger T. Benitez
United States District Judge